COUNTY OF OTTER TAIL *vs.* GEORGE W. BATCHELDER and another.

December 16, 1891.

**Taxes — Defences Available to Land-Owner — Inequality in Assessment.**—In proceedings for the recovery of a judgment against real estate for taxes it may be shown, for the purpose of reducing the tax charged upon the land, that the statutory requirement of equality in the assessment had been intentionally disregarded, or that by reason of some perfectly obvious mistake there had been no real assessment upon any rule of equality.

**Same—Circumstantial Evidence.**—Proof of such facts may be circumstantial; but the mere fact of error in estimating values is not a defence.

·Case certified from the district court for Otter Tail County, *Baxter,* J., presiding, in proceedings to enforce payment of delinquent real-estate taxes in that county.

*M. J. Daly,* for plaintiff.

*Charles S. Batchelder* and *Parsons & Brown,* for defendants.

DICKINSON, J.   Batchelder and Buckham, being the owners of nearly 60 tracts of land in the town of Edna, in Otter Tail county, interposed an answer in these proceedings for the recovery of a tax judgment against such lands, and upon their answer the matter was tried in accordance with the statute in the district court.   The decision was against the parties thus answering, who may be designated the defendants, and at their request the matter was certified to this court for review.   Briefly stated, the defence shown or offered to be shown was as follows:   It was proved beyond dispute (as the court finds) that the lands in question were unimproved, situate remote from roads, and the highest cash value of any of them did not exceed $2.75 per acre.   The average valuation of lands in the whole township, including improved lands, as assessed in these tax proceedings did not exceed $4.44 per acre, while the lands in question of these defendants were assessed at the average value of $4.07 per acre.   The defendants offered to prove "that lands other than those of the defendants in said town, both improved and unimproved, and the structures, were assessed at less than one-half their cash value."   This proof was excluded.   They also offered to show that they, being nonresidents of the county, duly petitioned the county board of equalization for a reduction of the assessed valuation of their lands, which proof was also excluded.   The answer, setting forth substantially the facts above indicated, further alleged that the taxes sought to be enforced were "partially, unfairly, and unequally assessed."

As we understand from the note of the learned judge appended to his decision, it was considered that only when there has been an *omission* of some of the proceedings prescribed by statute, which omission has resulted in prejudice to the defendant, can such a defence be made by answer as these defendants sought to present; and that, in the absence of any such omission, the land-owner is concluded by the action of the board of equalization.   We think that.

the statute is more liberal than this in respect to the making of de-
fences in the tax proceeding wherein judgment is sought to be recov-
ered.    Section 75, c. 11, Gen. St. 1878, gives the right, in general
and unrestricted terms, to persons interested in the land, to file an
answer setting forth their defence or objection to the tax for which
judgment against the land is sought.   Section 79 is as follows:

"If all the provisions of law in relation to the assessment and levy
of taxes shall have been complied with, of which the list so filed with
the clerk shall be *prima facie* evidence, then judgment shall be ren-
dered for such taxes and the penalties and costs.   But no omission
of any of the things by law provided in relation to such assessments
and levy, or of anything required by any officer or officers to be done
prior to the filing of the list with the clerk, shall be a defence or objection
to the taxes appearing upon any piece or parcel of land, unless it be
also made to appear to the court that such omission has resulted to
the prejudice of the party objecting, and that the taxes against such
piece or parcel of land have been partially, unfairly, or unequally
assessed; and in such case, but no other, the court may reduce the
amount of taxes upon such piece or parcel, and give judgment
accordingly.   It shall always be a defence in such proceedings, when
made to appear by answer and proofs, that the taxes have been paid,
or that the property is not subject to taxation."

Except as to the matters of exemption and payment specified in
the last sentence of this section, it is noticeable that the statute
does not affirmatively and specifically state the nature of the de-
fences which may be made, unless it be in the language that "in
such case, but no other, the court may reduce the amount of taxes,"
etc.   As has been indicated in our former decisions, we are of the
opinion that the statute was not intended to precisely define and
limit the defences which may be made.   *County of Redwood* v.
*Winona & St. Peter Land Co.,* 40 Minn. 512, (41 N. W. Rep. 465,
and 42 N. W. Rep. 473.)   There can be no question as to the
meaning and effect of the negative provision that no omission of
what the law requires to be done shall be a defence, unless it be
shown that prejudice has resulted therefrom to the party object-
ing, and that the taxes have been partially, unfairly, or unequally

assessed. Then, following the semicolon, is the other member of the sentence, "and in such case, but no other, the court may reduce the amount of taxes," etc. This is to be read in intimate connection with the preceding part of the same sentence, and as referring to cases of omission of some prescribed proceeding. The meaning and effect of the whole sentence is that no mere omission of statutory requirements shall constitute a defence, *unless* it be shown that it resulted to the prejudice of the party objecting, *and* that the taxes against which he seeks to defend have been partially, unfairly, or unequally assessed, in which case, but not otherwise, the court may reduce the amount of taxes upon such piece or parcel of land, and give judgment accordingly. We see no sufficient reason for the conclusion that it was intended to restrict the right of defence to cases in which there has been some omission of the statutory requirements. To so construe the law would subordinate essential, substantial things to those of less importance, and make the right of defence against the gravest wrongs to wholly depend upon the fact as to whether there had been some omission in the statutory proceedings. For instance, if the assessor fails to take the oath required by law, and then fraudulently and intentionally assesses particular property at twice its actual value, the owner would have the right to show such facts in defence, if the proper board of equalization should refuse relief. But must the statute be so construed that, if the assessor has done the same thing after having taken the oath required of him, no defence to the intentionally wrongful assessment can be made? Such a construction is not necessary. We have no doubt that such a case would constitute a defence to the taxes, in part, irrespective of the fact as to whether there had been any omission of the statutory requirements.

But while a defence may be made to the assessment under some circumstances, as in the case above suggested, yet from the very nature of the subject it must be considered that the mere fact that the assessment is too large cannot be allowed as a defence. From necessity, tax proceedings are and must be in a great degree summary. It would be practically impossible for our courts of general jurisdiction to determine, in the manner in which property rights are ordi-

narily determined, the amount which each subject of the government
should contribute towards its support, or even hear and redress all
the grievances which may result from erroneous estimates of value
by assessors and boards of equalization.    Nor is there anything in the
statute justifying the conclusion that such an extraordinary and im-
practicable procedure was intended.    Ordinarily the citizen is con-
cluded by the action of the officers upon whom the duty of assess-
ment rests, if they act in conformity with the statute; and, notwith-
standing the peculiar features of our tax law, providing for the
rendition of a judgment in the tax proceedings, and giving the right
to defend before the property-owner is concluded by such judgment,
it must still be considered that under ordinary circumstances the
assessment of value, as determined by the assessor and the proper
board of equalization, is final.    It cannot have been the purpose of
the law that the honest exercise of their judgment, unaffected by any
extraordinary mistake, should be subject to review and reversal by
the courts; or that a trial in court should be allowed in the case of
every property-owner who might consider that the taxing officers had
erred in their estimate of the value of his property.    But the law
contemplates, as a necessary, indispensable step in the process of
taxation, the honest exercise of the judgment of such officers, to the
end that all taxable property may be assessed at its actual value,
and so equality of taxation secured, so far as is reasonably practi-
cable.    If this requirement may be disregarded, and the mere will,
prejudice, favor, or self-interest of the assessor, and not the certain
and uniform rule prescribed by the statute, is to be allowed to con-
trol his action, the people would be subject to the grossest wrong,
and the constitutional and statutory rule of equality in taxation
would be of little avail.    It may safely be concluded that under this
law, recognizing the right to defend in respect to taxes "partially,
unfairly, or unequally assessed," it was contemplated that a prop-
erty-owner might show in defence or in reduction of the tax charged
upon his property, that the requirement of a *bona fide* assessment
had been intentionally disregarded by the taxing officers, to the
prejudice of such land-owner.    We go further, and hold, as was con-
sidered in respect to special assessments under a city charter in

*State* v. *Board of Public Works of St. Paul,* 27 Minn. 442, (8 N. W.
Rep. 161,) and *State* v. *District Court of Ramsey Co.,* 29 Minn. 62,
(11 N. W. Rep. 133,) that, even though no intentional fraud be
proved, it may be shown in defence that the error in the assessment
was so gross that it cannot be accounted for upon any ground of mere
misjudgment of value, but must have resulted, if not from fraud,
from what in the case first cited above was called a "demonstrable
mistake of fact." By proof of this nature it would be possible to
show very clearly that there had really been no assessment of the
property in question, and that the valuation on the assessment-roll
did not express any estimate or opinion of the assessor as to the
value of the property.

Applying to this case the conclusions above expressed as to the
effect of the statute, we think that the court erred in rejecting the
evidence offered by the defendants. The answer is deemed sufficient
to admit the proof offered. The statute (section 75) only requires
that the answer set forth the facts constituting the defence or ob-
jection to the tax. It is alleged that the taxes in question were
partially, unfairly, and unequally assessed; the extent of such in-
equality in comparison with the other lands in the town being stated.
We understand the offer to show that lands other than those of the
defendants were assessed at less than one-half their value referred to
other lands generally, and not to a few particular tracts. It will
be seen, then, that the case sought to be shown was, in brief, that
while the lands in general in the township were assessed at less
than one-half their value, the unimproved lands of these defendants
were assessed at nearly 50 per cent. above their value. Such proof
should be considered, too, in connection with the circumstances
that this inequality was not with respect to a single tract of land,
which might more readily be accounted for on the ground of error of
judgment, but to nearly 60 different tracts owned by these non-resi-
dent defendants. Such facts being shown, it would be difficult, in
the absence of opposing proof or explanation, to escape the conclu-
sion that the assessment had been intentionally made without re-
gard to the requirements of the law, and upon a basis of systematic
inequality.

For the reasons above stated we are of the opinion that a new trial must be granted to the defendants, and it is so ordered, the order for judgment being reversed.